**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Delores May, *et al.*, | No. CV-23-08120-PCT-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

At issue are Plaintiffs Delores May and Dominic Tracy's Motion to Exclude Opinions/Testimony of Joseph Peles and Brian Onstot (Doc. 95), to which Defendant the United States filed a response (Doc. 120) and Plaintiffs filed a reply (Doc. 121); Plaintiffs' Objections to the government's response (Doc. 122), to which the government filed a response (Doc. 124); and the government's Motion to Preclude Plaintiffs' Accident Reconstructionist Expert Patrick DeJonghe's Testimony Pursuant to *Daubert* (Doc. 96), to which Plaintiffs filed a response (Doc. 114) and the government filed a reply (Doc. 120, consolidated with its response).

## I.     BACKGROUND

On April 13, 2021, Plaintiff Delores May pulled her car out of a scenic overlook in northern Arizona and onto Interstate 93, when her car was struck by the blade of a bulldozer being hauled on a tractor-trailer driven by David Roy Holmes, a U.S. Department of Energy employee, causing injuries to her and her two passengers, Dominic Tracy and J.T., a minor. (Doc. 18, Am. Compl. ¶¶ 11–15.) She "mistakenly believed she was entering a non-existent

acceleration lane as she exited the parking lot of the . . . Overlook . . . and drove her SUV directly into the path of a [Western Area Power Administration] tractor-trailer truck that was transporting a bulldozer on its flatbed in U.S. 93's Number 2 outer/slow lane." (Doc. 97 at 2.)

Plaintiffs initiated this lawsuit on June 30, 2023 (Doc. 1), and they raise a single claim under the Federal Tort Claims Act (FTCA) premised on driver negligence. The parties have informed the Court in multiple briefs that Plaintiffs have sued the State of Arizona in state court for defective road design. (*E.g.*, Docs. 88; 108 (Plaintiffs' witness stating that, "[i]n a related state court action, Plaintiffs have sued the State of Arizona, claiming that it negligently designed US 93 by failing to add an 'acceleration' lane for vehicles to part the scenic overlook.").) Thus, at issue in this lawsuit is Plaintiffs' negligence theory "about the driver's fault, his alleged breach of duty, and the liability it allegedly triggered in the United States." (Doc. 119 at 3; Doc. 131, Order.)

To that end, each side has engaged an accident reconstructionist to provide expert testimony at trial, and now the parties each move to exclude the testimony of the opposing party's expert under *Daubert* and its progeny.

## II.    LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). The trial judge acts as the "gatekeeper" of expert witness testimony by engaging in a two-part analysis. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 592 (1993). First, the trial judge must determine that the proposed expert witness testimony is sufficiently reliable and based on scientific, technical, or other specialized knowledge. *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Second, the trial court must ensure that the proposed testimony is relevant—that it "will assist the trier of fact to understand or determine a fact in issue."

*Id.* "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401.

"The inquiry envisioned by Rule 702" is "a flexible one." *Daubert*, 509 U.S. at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire*, 526 U.S. at 152. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595 (citation omitted).

## III.    ANALYSIS

As a threshold matter, in a case such as the present one that must be tried to the Court, not a jury, *see* 28 U.S.C. § 2402, many of the policies underlying *Daubert* and its progeny regarding the Court's role as gatekeeper of expert evidence presented to a jury are not present, because at trial the Court will be both factfinder and arbiter of the law. As many of the evidentiary issues raised by the parties in their briefs can be ruled upon by the Court in a bench trial, the Court need not address them now, outside the trial context. Still, the Court must determine prior to trial if each side's proposed expert testimony is sufficiently relevant and reliable to be presented at trial at all.

In that regard, the Court first finds that both sides' accident reconstruction experts, Mr. DeJonghe for Plaintiffs and Mr. Peles for the government, are qualified to opine on the matters contained in their reports. Both of them are Accredited Traffic Accident Reconstructionists. (Doc. 95-4 at 2; Doc 95-5 at 60.) The parties do not argue otherwise, except to the extent Plaintiffs contend that Mr. Peles is not qualified to testify as to restraint systems, and specifically, to opine as to whether J.T. was wearing a seat belt at the time of the accident. (Doc. 95 at 9, 17.) But the testimony Plaintiffs argue is beyond Mr. Peles's ken—that the seat belt's latch plate and webbing stop, the friction marks on the seatback,

and the seat belt's intertwinement with the wreckage all indicate J.T.'s seat belt was not in use (Doc. 95 at 9)—is not testimony as to seat belt design so much as it is testimony as to what happened in the accident, or accident reconstruction. Mr. Peles does not attempt to testify, for example, how the seat belt could have been designed more effectively for this type of collision—testimony that would undoubtedly require seat belt design expertise. Accident reconstruction is Mr. Peles's expertise (Doc. 95-5 at 60–63), and thus the Court will not exclude his opinions about whether J.T. was wearing a seat belt based on any lack of expertise.

The balance of both sides' arguments against each other's accident reconstructionist testimony go to its weight, not admissibility. A *Daubert* analysis does not have as its goal for the Court to determine whose expert is right and whose is wrong (or some combination of the two) before trial. Both experts employ generally the same methodology; it is each expert's application of the facts of this case to that methodology that differs, and in particular their conclusions about the Perception Reaction Time to be applied here.[1] (*E.g.*, Doc. 95 at 4–18; Doc. 120 at 11–12.) But simply because the experts disagree in the conclusions they reach does not make either expert's opinion unreliable or irrelevant. The Court will hear both experts' testimony at trial, and each side will have the opportunity to cross-examine those experts in an attempt to poke holes in their testimony. Indeed, that is one of the core purposes of trial.

Plaintiffs make the additional argument that Mr. Peles improperly relied on testing and analysis conducted by his assistant, Brian Onstot, to reach his conclusions, and the conclusions must therefore be excluded because Mr. Peles did not conduct the testing or analysis himself and Mr. Onstot was never disclosed as an expert in this case. (Doc. 95 at 11–17.) But as the government points out (Doc. 120 at 3–10), an expert is able to employ the help of an assistant to conduct research, tests, or analysis in the formulation of the expert's opinions so long as the expert verifies the assistant's work; it is not required that

---

[1] The parties report that Perception Reaction Time is the time a driver should begin to respond to a "clear stimulus that presents a fairly straightforward event" of concern. (*E.g.*, Doc. 95 at 4 n.2, Doc. 96-1 at 4.)

the assistant be disclosed as an additional expert. *See, e.g.*, Advisory Committee Notes to 1972 enactment of Federal Rule of Evidence 703; *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 612–13 (7th Cir. 2002); *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, 571 F. Supp. 3d 106, 115 (S.D.N.Y. 2021). For this reason, the Court declines to exclude Mr. Peles's conclusions simply because he relied on certain testing and analysis conducted by Mr. Onstot.

Finally, the Court need not rule on Plaintiffs' other objections to Mr. Peles's testimony (Doc. 122) at this juncture; the Court will rule on any such objections in the context of Mr. Peles's testimony in the bench trial.

**IT IS THEREFORE ORDERED** denying Plaintiffs' Motion to Exclude Opinions/Testimony of Joseph Peles and Brian Onstot (Doc. 95), and the United States' Motion to Preclude Plaintiffs' Accident Reconstructionist Expert Patrick DeJonghe's Testimony Pursuant to *Daubert* (Doc. 96).

**IT IS FURTHER ORDERED** overruling as moot Plaintiffs' Objections to the Affidavit of Joseph Peles (Doc. 122). Because all pending pre-trial motions are now resolved, the Court will set a pre-trial status conference by separate Order.

Dated this 16th day of March, 2026.

Honorable John J. Tuchi
United States District Judge